UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Concorde Investment Services, LLC,

    Plaintiff,

v.                                    Case No. 19-13203

Everest Reinsurance Company,       Sean F. Cox
                                                         United States District Court Judge

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 15) AND MOTIONS FOR PROTECTIVE ORDERS (ECF Nos. 16 and 24)**

In the summer of 2016, an investment advisor embezzled $545,000 from a client. After his fraud was discovered, his firm paid a cash settlement to the victim.

This case is about who will be left holding the bag for the advisor's fraud and the firm's failure to prevent it. The investment firm contends that the settlement it reached with the victim is a covered loss under its insurance policy. For nearly three years, its insurance company has failed to either deny or accept its claim, so the firm filed this lawsuit for breach of contract and other contractual duties.

The insurance company has moved to dismiss the case, arguing that, under the two-year contractual limitations period provided for in the insurance policy, the investment firm waited too long to file its lawsuit. In response, the firm argues that most of its claims are not dependent on this limitations period, and that the insurance company is estopped from raising this defense (or has waived it) because of its dilatory tactics in investigating the claim.

1

The Court concludes that one of the firm's claims (Count II) is not controlled by the two-year limitations period. As for the other claims, the Complaint adequately pleads estoppel and waiver, and factual development is needed to properly resolve these issues. Thus, the Court will deny the motion to dismiss.

The insurance company has also filed two motions for protective orders. Because these motions are tied to the resolution of the motion to dismiss, the Court will deny them as moot.

## BACKGROUND

Plaintiff Concorde Investment Services, LLC, is a "national securities broker-dealer" that "offers securities and asset management services to retail customers." First Amended Compl. ("FAC") ¶ 6. (ECF No. 12, PageID 154). Concorde purchased a fidelity bond insurance policy, effective January 1, 2016, ("the Policy") from Defendant Everest Reinsurance Company. FAC ¶ 8. Under the Policy, Everest agreed to indemnify Concorde for certain losses that resulted from their employees' malfeasance or crimes committed on their premises:

> The Underwriter, in consideration of an agreed premium, and in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for this bond, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:
>
> > (A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:
> >
> > > (a) to cause such loss; with respect to Trading, illicit gain/benefit of employee covered; and
> > >
> > > (b) to obtain financial benefit for the Employee and which, in fact, result in obtaining such benefit.
>
> . . .

      (B) (1) Loss of Property resulting directly from

          (a) robbery, burglary, misplacement, mysterious unexplainable disappearance and damage thereto or destruction thereof, or
          (b) theft, false pretenses, common-law or statutory larceny, committed by a person present in an office or on the premises of the Insured, while the Property is lodged or deposited within offices or premises located anywhere.

. . .

      (D) Loss resulting directly from

          (1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit.

          (2) transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any financial institution but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or financial institution. A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

Financial Institution Bond, No. FL5FD00059-161, 3-4 (ECF No. 15-1, PageID 210-211).[1]

Employees like Richard G. Cody are the reason why investment firms purchase these kinds of insurance policies. Concorde employed Cody as a financial advisor, but he did not live up to the ethical or legal obligations of that position. From June to August 2016, Cody "converted the sum of $545,000 from a Concorde customer's brokerage account by way of three forged wire

---

[1] Although the bond itself was not attached to Concorde's Amended Complaint, the Court may consider it when ruling on this motion to dismiss because it is integral to the Complaint. *Commercial Money Ctr., Inc., v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

transfer requests without the customer's knowledge or consent, and Cody absconded with the customer's funds to a third-party account for his own illicit benefit[.]" FAC ¶ 17.

Concorde became aware of Cody's unauthorized withdrawals on December 16, 2016, when the defrauded client filed an arbitration claim against it with the Financial Industry Regulatory Authority (commonly known as "FINRA"). *Id*. at ¶ 18. "Concorde promptly commenced an investigation and gave written notification to Everest[.]" *Id*. Concorde's investigation revealed that "Cody [had] submitted signature-altered (i.e., forged) Letters of Authorization to Concorde for all three of these transactions, and Cody [had] contacted the same Concorde agent for all these transactions to process the wire transfers. The custom and practice of both Cody and the Concorde agent were the same for the three transactions. Concorde, via its agent, was under the false impression that the transfers were authorized by the customer, and Concorde was unaware of any forgery." *Id*. at ¶ 21. Once Concorde's investigation was complete, it "updated its notice of claim to Everest on or about January 13, 2017." *Id*. at ¶ 24.

Eventually, Concorde settled the client's claims against it for $462,500, plus an additional $90,579.70 in attorney fees and costs, "because Cody committed the forgery as Concorde's then-registered representative and said forgery was negligently processed by Concorde." *Id*. at ¶ 27. Cody is currently serving a two-year federal prison sentence for investment advisor fraud and making a false declaration under oath. *United States v. Cody*, No. 17-10291 (D. Mass. filed Sept. 26, 2017); *see also Former advisor sentence to two years for lying to clients*, *SEC*, INVESTMENTNEWS (March 8, 2019), https://www.investmentnews.com/former-adviser-sentenced-to-two-years-for-lying-to-clients-sec-78515 (last accessed May 18, 2020). Cody's conviction and sentence appear unrelated to any of the unauthorized transfers that underlie this case.

4

While Concorde appears to have investigated Cody's conduct and resolved its dispute with Cody's victim relatively quickly, Everest's investigation of Concorde's insurance claim was not so promptly completed. On March 1, 2017, Everest sent a coverage letter to Concorde. FAC ¶ 25. This letter reserved Everest's rights under the Policy. *Id*. During 2018, Concorde "submitted its President and Chief Compliance Officer to Everest's live investigation interviews," and "continued to furnish information and tertiary witness names to Everest[.]" *Id*. at ¶ 32. On October 5, 2018, Everest sent another letter to Concorde. *Id*. at ¶ 41. This letter stated "[a]t this point, Everest has not completed its review of the facts or analysis of coverage, and thus we cannot provide Concorde with a final coverage decision. However, this letter will provide you with Everest's preliminary observations concerning coverage." (ECF No. 15-6, PageID 269).[2] The October 5, 2018 letter detailed Everest's observations about how the policy applied (and did not apply) to Concorde's claims, requested further interviews and more documents, and ended with another reservation of Everest's rights:

> Please understand that Everest continues to reserve all of its rights and defenses in this matter. Neither by raising certain provisions of the Bond above, but not others, nor by any other action or inaction, is it Everest's intention to waive or relinquish any of its rights or defenses in connection with the matter. To the contrary, all such rights and defenses continue to be fully reserved.

(ECF No. 15-6, PageID 276).

In December 2018, Everest retained outside counsel to take over its investigation of Concorde's claim. FAC ¶ 42. On December 21, 2018, Everest's new counsel emailed Concorde,

---

[2] Concorde's FAC referenced and quoted the October 5, 2018 letter, but it was not attached. However, this letter is central to the parties present dispute about waiver and estoppel, and there are no material disputed issues of fact regarding its relevance. *Mediacom Se. LLC v. BellSouth Telecomms., Inc*., 672 F.3d 396, 400 (6th Cir. 2012). Therefore, the Court may consider the unquoted portions of the letter when ruling on this motion to dismiss.

reiterating Everest's desire to "obtain copies of all relevant documents," and insisting that it "be permitted to interview the additional witnesses and obtain the requested documents." *Id*.

Everest's investigation continued into the spring of 2019. On May 8, 2019, Everest's counsel emailed Concorde, acknowledging the receipt of additional documents and promising to respond after they returned to the office from a medical procedure. *Id*. at ¶ 43. Over a month later, Everest's counsel responded to a request for a status update by promising to respond "next week." *Id*. at ¶ 44. Ten days later, Everest's counsel asked to conduct several in-person interviews of Concorde employees in September 2019. *Id*. The parties disputed whether Everest was entitled to a stenographer at these interviews, so they were delayed. *Id*.

Fed up with Everest's perceived foot-dragging, Concorde filed this lawsuit on October 31, 2019. (ECF No. 1). On January 7, 2020, Everest filed a motion to dismiss. (ECF No. 8). As is its usual practice, the Court entered an order, affording Concorde the opportunity to cure the purported defects by filing an amended complaint. (ECF No. 10). Concorde took advantage of this opportunity and filed its First Amended Complaint on February 6, 2020. (ECF No. 12).

Concorde's Amended Complaint brings four claims: (1) breach of contract for Everest's failure to issue a timely payment for a loss covered by the Policy ("Count I"); (2) breach of Everest's implied contractual duty to act in good faith ("Count II"); (3) a request for interest on the unpaid insurance proceeds under Michigan's Uniform Trade Practices Act ("Count III"); and (4) a claim for declaratory relief ("Count IV").

On February 14, 2020, Everest filed a new motion to dismiss. (ECF No. 15). Everest's motion relies on a provision in the Policy that limits the time period in which Concorde can file a lawsuit to recover a loss under the Policy:

> Legal proceedings for the recovery of any loss hereunder shall not be brought prior to expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss.

(ECF No. 15-1, PageID 217). Under this contractual limitations provision, the clock began to run on any of Concorde's claims that seek the recovery of a loss under the Policy on December 16, 2016. That clock ran out 24 months later, on December 16, 2018. Because Concorde waited until October 31, 2019—over 34 months after Concorde first discovered its potentially covered loss—to file this motion, Everest argues that this case is barred by the Policy's contractual limitations period.

On February 28, 2020, Concorde filed a response, opposing Everest's motion for two reasons. (ECF No. 18). First, Concorde argues that the Policy's contractual limitations period does not apply to Counts II, III, and IV because these claims do not seek recovery for a loss provided for under the Policy. Second, Concorde argues that Everest has either waived this defense, or is estopped from asserting it, because Everest unreasonably prolonged its investigation and lulled Concorde into the belief that the limitations period would not be enforced.

On March 13, 2020, Everest filed a reply, arguing that all of Concorde's claims are barred and that Concorde has not sufficiently established waiver or estoppel. (ECF No. 22).

Everest has also filed two motions for protective orders. (ECF Nos. 16 and 24). These motions seek to delay discovery until after the Court has ruled on its motion to dismiss.

## ANALYSIS

### I.     Applicable Standards

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its well-pleaded factual allegations

as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer factual allegations sufficient to make the asserted claims plausible on their face. *Twombly*, 550 U.S. at 570. Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because the Court's jurisdiction in this case is based on the parties' diversity of citizenship, the Court applies Michigan state law and the Michigan Supreme Court is the controlling authority. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If the Michigan Supreme Court has not decided an issue, then the Court "must ascertain the state law from all relevant data." *Orchard Grp., Inc., v. Konica Med. Corp.*, 135 F.3d 421, 427 (6th Cir. 1998) (citations omitted). "Relevant data includes state appellate court decisions, supreme court dicta, restatements of law, law review commentaries, and majority rule among other states." *Id*. When considering these sources, the Court will not disregard a state intermediate appellate court's opinion "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Garden City Osteopathic Hosp., v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citations omitted).

Under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Continental Ins. Co.*, 473 Mich. 457, 461; 703 N.W.2d 23 (2005). When interpreting insurance policies, "the court's role is to 'determine what the agreement was and effectuate the intent of the parties.'" *Hunt v. Drielick*, 496 Mich. 366, 372; 852 N.W.2d 562 (2014) (quoting *Auto–Owners Ins Co v. Churchman*, 440 Mich. 560, 566; 489 NW2d 431 (1992)). Courts must construe and apply unambiguous insurance policy

provisions as written unless the provision violates law or a traditional contract defense applies. *Rory*, 473 Mich. at 461.

## II. Everest's Motion to Dismiss

To resolve Everest's motion to dismiss, the Court must determine whether the two-year contractual limitations period bars Concorde's claims, even at this early stage of this case. Concorde argues that it does not because (1) most of its claims do not fall within that provision, and (2) the equitable principles of waiver and estoppel prevent Everest from relying on this provision after it spent years investigating the claim.

### A. Whether the Contractual Limitations Period Applies to Counts II, III, and IV

Concorde argues that Counts II, III, and IV are not barred by the contractual limitations period. This argument is based on that provision's "clear and unambiguous terms:"

> Legal proceedings **for the recovery of any loss hereunder** shall not be brought prior to expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss.

(ECF No. 15-1, PageID 217) (emphasis added). Concorde contends that, because Counts II, III, and IV do not seek "the recovery of any loss hereunder," these claims fall within Michigan's generic six-year statute of limitations for contract claims. *See* M.C.L.A. § 600.5807(9). The Court will address each count in turn.

#### i. Count II (Breach of Implied Duty of Good Faith)

Count II alleges that Everest breached its implied contractual duty to act in good faith when investigating Concorde's insurance claim. Everest argues that this claim is barred by the contractual limitations period because "an insurer's duty of good faith and fair dealings is implied from the contract of insurance between the insurer and insured." (ECF No. 22, PageID 532). The remedy for a breach of this duty is "thus limited to the contractual damages that are afforded under

9

the policy." *Id*. According to Everest, this means that "the Everest Policy's 24-month contractual limitations period applies with equal force to Concorde's breach of the implied contractual duty to act in good faith." *Id*.

In the insurance context, Michigan law recognizes a contractual duty for an insurer to exercise good faith when investigating and paying an insurance claim. *See No Limit Clothing, Inc., v. Allstate Ins*. Co, 2011 WL 96869 at *3 (E.D. Mich. 2011) ("Thus, a contract-based claim for breach of the implied covenant of good faith in investigating and paying an insurance claim is viable in Michigan.") Concorde alleges that Everest has breached this duty by "wrongfully, intentionally, and in bad faith:"

> (a) Failing to issue a timely written position, i.e., acceptance, denial or reservation of rights, to Concorde;
>
> (b) Failing to promptly examine-investigate the Claim;
>
> (c) Insisting on re-doing the examination-investigation of the Claim for no valid reason;
>
> (d) Delaying its examination-investigation and thereby unreasonably delaying the issuing of its final position on the claim;
>
> (e) Engaging in an unreasonable and arbitrary interpretation of the Policy;
>
> (f) Failing to timely provide coverage for the Claim;
>
> (g) Failing to timely indemnify Concorde for the Claim;
>
> (h) Forcing Concorde to incur the expense of filing this lawsuit to recover benefits owing under the Policy;
>
> (i) Placing its own interests above those of its insured, Concorde; and
>
> (j) Lulling and purposefully misleading Concorde into waiting for a coverage determination by Everest in order to assert a contractual limitations defense in bad faith

FAC ¶ 54. Everest appears to argue that these allegations amount only to a bad-faith breach of the insurance policy, and that, because Michigan recognizes no difference between a good-faith breach and a bad-faith breach, Count II is barred to the same extent as Count I. *See* Def.'s Reply 1-2 (ECF No. 22, PageID 532-533). However, at least some of these allegations, if true, implicate Everest's separate duty to exercise good faith in investigating Concorde's claim. *See, e.g.*, FAC ¶ 54(a)-(d).

Moreover, the Policy's text does not support Everest's argument that Count II is barred by the contractual limitations period. Everest argues that the relevant duty to exercise good faith in investigating a claim is "implied" or "arises" from the Policy. Yet the contractual limitations provision is not so broad. It only applies to claims "for the recovery of any loss" described by the Policy; it does not bar all claims that *arise from*, or are *related to*, the Policy. To be sure, Count II seeks to redress a harm that is related to the Policy, and alleges the breach of a duty that arises from the Policy. But it does not seek to recover a loss described in the Policy. Accordingly, Count II is not governed by the two-year contractual limitations period. Instead, it falls within Michigan's generic six-year statute of limitations for contract-based claims.

### ii. Count III (Claim for Interest)

Count III seeks interest on Concorde's alleged covered loss. Michigan law requires insurers to "pay on a timely basis to its insured. . . the benefits provided under the terms of its policy[.]" M.C.L.A. § 500.2006(1). If an insurer does not pay benefits "on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% annum, if the claimant is the insured. . . The interest must be paid in addition to and at the time of the payment of the loss." M.C.L.A. § 500.2006(4).

Everest argues that this claim is barred by the contractual limitations period because "the interest is only owed if the claim is first covered by" the Policy. Def.'s Reply 3. The Court agrees.

11

Concorde can only succeed on Count III if it succeeds on Count I, which is undisputedly subject to the two-years limitations period. Moreover, M.C.L.A. § 500.2006(4) provides that interest paid under that section "must be paid. . . at the time of the payment of loss." If the contractual limitations provision bars Concorde from suing to recover the loss, it must also bar Concorde from suing to recover interest on that loss.

### iii. Count IV (Declaratory Relief)

In Count IV, Concorde seeks "a declaration of its rights and Everest's duties under the Policy." FAC ¶ 71. Concorde alleges that this declaration is necessary "(a) to avoid a multiplicity of actions; (b) so that the parties will know their rights, duties and obligations under the Policy; and (c) so that Concorde will receive the benefits under the Policy." *Id*. Specifically, Concorde believes it is "entitled to a declaration that its contentions that this is a Covered Loss are correct." *Id*.

"A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would also be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir.1997). Count IV seeks a declaration that Concorde is entitled to the substantive relief requested in Count I, which is undisputedly subject to the two-year limitations period.[3] Accordingly, Count IV is also subject to the contractual limitations period.

---

[3] Count IV seeks no declaration of rights related to Count II, which (as described above) is not subject to the two-year limitations period. If it did, then it might also fall within the generic six-year statute of limitations.

### iv. Conclusion

For the reasons above, Counts III and IV are subject to the two-year contractual limitations period, and Count II is governed by Michigan's generic six-year statute of limitations for contract-based claims.

### B. Whether Concorde Has Adequately Pleaded Waiver and Estoppel

Concorde argues that, even if its claims are subject to a two-year limitations period, Everest has either waived this defense or is estopped from asserting it. Concorde contends that these equitable principles apply because Everest lulled Concorde into inaction until after the limitations period expired. Everest disagrees.

Shortening the time period in which an insured can bring a claim against its insurer is permitted by Michigan law. *Rory*, 473 Mich. at 470. However, "recognized traditional contract defenses may be used to avoid the enforcement" of these kinds of contractual provisions. *Id*. Traditional contract defenses include waiver and estoppel. *Id*. at n. 23.

"A waiver is a voluntary relinquishment of a known right." *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 204 (2008) (quotations omitted). "If an insurer, through negotiations or dilatory tactics, induces an insured to forego bringing suit under an insurance policy until after its limitations period has expired, the insurer will be held to have waived the limitations defense." *Better Valu Homes, Inc., v. Preferred Mutual Ins. Co.*, 60 Mich.App. 315, 318 (1975).

For equitable estoppel to apply, Concorde must establish that (1) Everest's acts or representations induced Concorde to believe that the limitations period clause would not be enforced, (2) Concorde justifiably relied on this belief, and (3) Concorde was prejudiced as a result of its reliance on the belief that the clause would not be enforced. *McDonald*, 480 Mich. at 204-205.

13

Because the Court is viewing this case through the lens of a motion to dismiss, it must look only to the Amended Complaint's factual allegations to determine whether Concorde has adequately pleaded that these equitable defenses do not apply. Based on that set of facts, the Court concludes that Concorde has met this threshold.

According to the Amended Complaint, Concorde discovered the alleged covered loss on December 16, 2016. FAC ¶ 18. This discovery started the two-year clock under the Policy's limitations period. Everest investigated the claim and Concorde "promptly furnished Everest with multiple rounds of requested documentation, including written responses to multiple requests for information. Concorde presented its Chief Executive Officer and its Chief Compliance Officer for oral examinations by Everest. Concorde complied with Everest's supplemental document and information requests and repeatedly searched for additional records at Everest's behest, including redundant document productions because Everest misplaced already-produced documents." FAC ¶ 34. "[T]hroughout Everest's processing and investigation of the Claim, Everest and its agents sent numerous communications (both oral and written) to Concorde and its agents, stating that Everest was still in the process of evaluating coverage of the Claim under the Policy; needed more time and information, including documents and in-person interviews, from Concorde so that Everest could make a final coverage determination; and otherwise inducing Concorde to wait for a decision by Everest before filing this lawsuit." FAC ¶ 40.

On October 5, 2018—two-and-a-half months before the limitations period expired—Everest sent a letter to Concorde, explaining its preliminary observations and requesting further interviews. FAC ¶ 41. Concorde alleges that this letter "was intended by Everest to delay Concorde from filing this lawsuit so that Everest could then try to apply the Policy's contractual limitations period as a defense to the lawsuit." *Id*.

14

In December 2018—just before, as, or after the limitations period expired—Everest "retained outside counsel to take over the investigation of the Claim." FAC ¶ 42. Days after the limitations period expired, Everest's new counsel emailed Concorde, insisting that Everest "be permitted to interview the additional witnesses and obtain the requested documents." *Id*.

In May and June 2019, Everest continued to communicate with Concorde in a way that indicated the investigation was continuing. FAC ¶ 43-44

Viewing these factual allegations in Concorde's favor, the equitable principles of waiver and estoppel have been adequately pleaded. These allegations raise a reasonable inference that Everest engaged in dilatory tactics (by, for example, requesting multiple rounds of redundant document requests and hiring new counsel at the eleventh hour to effectively restart its investigation) and that these tactics induced Concorde to forego bringing suit under the Policy until after the limitations period had expired. *See Better Valu Homes,* 60 Mich.App. at 318 (describing the requirements of waiver). The allegations also raise a reasonable inference that Everest's acts or representations induced Concorde to believe that the limitations period clause would not be enforced, that Concorde justifiably relied on this belief, and that Concorde was prejudiced as a result of its reliance on the belief that the clause would not be enforced. *See McDonald*, 480 Mich. at 204-205 (describing the requirements of estoppel).

Everest's arguments to the contrary are unpersuasive. First, Everest argues that "under well-established Michigan law, "[a]n insured is held to the knowledge of the terms and conditions contained within an insurance policy." Def.'s Mot. 13 (ECF No. 15, PageID 198) (quoting *Marlo Beauty Supply, Inc., v. Farmers Ins. Grp. of Companies*, 227 Mich.App. 309, 324, 575 N.W.2d 324 (1998)). But under equally well-established Michigan law, even an unambiguous, well-known

15

contractual limitations provision can be subject to the equitable principles of waiver and estoppel if the insurer's actions induce inaction in the insured. *See Rory*, 473 Mich. at 470.

Second, Everest argues that continuing its investigation after December 16, 2018 has no bearing on Concorde's failure to comply with the limitations period. True enough, but Concorde's complaint pleads alleged dilatory tactics that occurred well before the deadline expired and that support a reasonable inference of waiver or estoppel. FAC ¶ 34, 40-42.

Third, Everest suggests that its October 5, 2018 "reservation of rights" letter cannot be construed as evidence of a dilatory tactic because it indicated that Everest was inclined to deny the claim, and specifically stated that Everest was not waiving any possible defenses. This letter, however, also stated that Everest's investigation was ongoing and requested specific in-person interviews. (ECF No. 15-6, PageID 269) ("Everest has not completed its review of the facts or analysis of coverage, and thus we cannot provide Concorde with a final coverage decision. . . As you are aware, we have asked that Concorde allow us to further evaluate Concorde's claim in this matter.") The letter makes clear that Everest had not reached a final decision, and that it believed that further investigation was necessary. Viewing Concorde's allegations in its favor, this letter might have led Concorde to reasonably rely on a belief that any lawsuit at that time would have been premature, and that a favorable resolution was at least still possible.

Finally, Everest argues that its failure to issue a final decision before the initiation of this lawsuit somehow cuts against Concorde's waiver and estoppel arguments. Everest contends that "[i]f Concorde truly believed that the Everest Policy's contractual limitations period was inapplicable, and that Michigan's six-year breach of contract limitations period applied, there is no explanation for why Concorde originally filed this action on October 31, 2019 without a final coverage decision in hand.") In other words, Everest appears to suggest that, to be logically

consistent, Concorde should have *waited longer* to file this lawsuit. But Everest provides no authority that would bar Concorde's attempt to enforce its rights under the Policy until after Everest issued a final decision.[4]

Thus, the claims that are subject to the two-year limitations period will be allowed to proceed because Concorde has adequately alleged facts that establish waiver and estoppel. Factual development is necessary to determine if these principles apply in this case.

### III. Everest's Motions for Protective Orders

Everest has filed two motions for protective orders, seeking to prevent Concorde from obtaining discovery before the Court resolved its motion to dismiss. On February 14, 2020, Everest filed a motion for a protective order that "Everest need not respond to Concorde's First Set of Discovery until after the Court's resolution of Everest's Motion to Dismiss Plaintiff Concorde's First Amended Complaint." (ECF No. 16, PageID 311). On March 31, 2020, Everest filed a second motion for a protective order that "Everest need not produce Elan Weiss for deposition until after the Court's resolution of Everest's Motion to dismiss Plaintiff Concorde's First Amended Complaint." (ECF No. 24, PageID 570-571).

Because the Court has now resolved the motion to dismiss, these motions will be denied as moot.

### CONCLUSION

For the reasons above, the Court **DENIES** Everest's motion to dismiss (ECF No. 15), and **DENIES** Everest's motions for protective orders (ECF Nos. 16 and 24) as **MOOT**.

**IT IS SO ORDERED.**

---

[4] The Court notes that there is no indication that Everest, even to this day, has issued a final decision on Concorde's claim.

17

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 3, 2020